UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Stephan Gagne,

                                    Plaintiff,                    **Hon. Hugh B. Scott**


                                                                         11CV361A


                              v.                                   **Order and
                                                                    Report &
                                                                  Recommendation**



C.O. Fix, et al.,

                                    Defendants.

_____


Before the Court are: the defendants' motion for partial judgment on the pleadings

(Docket No. 13); the plaintiff's cross-motion for summary judgment (Docket No. 20); and the

plaintiff's motion to compel. (Docket No. 21).



**Background**

The plaintiff commenced this action, asserting various claims against 33 defendants who

are either employed at the Attica Correctional Facility ("Attica")  or the administrative office of

the New York Stated Department of Correctional Services ("DOCCS")[1] including: C.O. Fix

_____

   [1]   The plaintiff identified this entity as the New York State Department of Correctional
Services. (Docket No. 1 at page 3).  This state agency is now referred to as the New York State
Department of Corrections and Community Supervision ("DOCCS").

1

("Fix"); C.O.Pritchard ("Pritchard"); C.O. George ("George"); C.O. Radimaker, Sr.

("Rademaker, Sr."); C.O. Radimaker, Jr. ("Radimaker, Jr."); C.O. Bosworth ("Bosworth"); C.O.

John Doe #1, C.O. John Doe #2; C.O. John Doe #3; Sergeant Corcoran ("Corcoran"); Sergeant

Taborski ("Taborski"); Superintendent J. Conway ("Conway"); Dep. Security Chapius

("Chapius"); I.G.P. Supervisor Struebel ("Struebel"); Correction Counselor Whiteford

("Whiteford"); P.A. Graf ("Graf"); P.A. John Does; P.A. Jane Does; R.N.Turton ("Turton");

R.N. John Does; R.N. Jane Does; M.D. John Does; M.D. Jane Does; Commissioner Brian

Fischer ("Fischer"); Deputy Commissioner LeClaire ("LeClaire"); Counsel William Gonzalez

("Gonzalez"); Galyn Schenk ("Schenk"); I.G.R. Roy ("Roy"); CORC Director Bellamy

("Bellamy"); CORC Director Egan ("Egan"); and the NYSDOCCS.[2]

The plaintiff claims that he is a qualified person with a disability who suffers from

degenerative disc disease, peripheral arterial disease, and cardiac issues which have required

triple by-bass surgery and stints inserted in his heart. In addition, Gagne asserts that he is a

diabetic and that he suffers from sciatica and other back issues causing him to ambulate with a

cane. (Docket No. 1 at page 5). The plaintiff asserts several wide-ranging claims, which District

Court Judge Michael Telesca described as "unduly discursive" and "difficult to decipher."

(Docket No. 4 at page 2).  Several of the plaintiff's claims were dismissed by Judge Telesca upon

initial review. The remaining claims appear to be as follows:

> Count 1 – On August 6, 2008, Fix confiscated the plaintiff's cane
> while the plaintiff was assigned to reside in B-Block.  Fix
> considered canes to be weapons. Gagne made several complaints to

---

[2]   The plaintiff also named Deputy Commissioner K. Decker and A.D.A Donna
Masterson D'Aloia as defendants. These defendants were removed from the caption inasmuch as
the complaint contained no allegations against them. (Docket No. 4 at page 25).

Corcoran about Fix confiscating his cane.  Gagne asserts that after his cane was confiscated, he also wrote to Conway and Chapius. They failed to intercede. The plaintiff claims that he was forced to move to different cell blocks on August 30, 2008, April 24, 2009, May 1, 2009 and May 5, 2009. Gagne claims that each time he was forced to do so without his cane and that Corcoran made the plaintiff carry his "50 pound" property bags when moving to his new cells. Radimaker Sr. also  refused to intervene.  (Docket No. 1 ¶¶ 1-29).[3]

Count 2 – Gagne claims that Chapius refused to allow the plaintiff to bring his cane into the mess hall. As a result, Gagne claims that he was "deprived of food for weeks at a time" and that he "lost weight, became ill, developed diabetes and heart trouble." Gagne claims that he wrote to Conway, but that Conway did not respond to his complaint until after Gagne had transferred out of Attica. (Docket No. 1 at ¶ 30-38).

Count 3 – This count is partially redundant to Gagne's first claim. The plaintiff claims that on April 24, 2009, Bosworth filed a false misbehavior report against him, and as a result, he was required to move back to B-Block. Gagne claims that he possessed "personal information" relating to five "abusive" corrections officers and that Bosworth informed these five officers that Gagne possessed the personal information.  As a result, the plaintiff claims he was threatened.[4]  The plaintiff claims that he wrote to Chapius, Roy, Fischer, LeClaire, Gonzalaz and Schenk regarding this matter "to no avail." As a result of the behavior of Bosworth and Corcoran and John Doe. #1, the plaintiff claims he was removed from an art program which he needed for the parole board.  He also claims that he was injured when he fell while moving between cells. (Docket No. 1 at ¶¶ 39-56).[5]

Count 4 – Gagne claims that on May 8, 2009, he was pulled out of

---

[3]   To the extent that the plaintiff asserted conspiracy claims or retaliation claims in Count 1, the claims were dismissed upon initial review of the complaint. (Docket No. 4 at page 26).

[4]   The plaintiff does not identify any specific threat.

[5]   To the extent that the plaintiff asserted conspiracy claims or retaliation claims in Count 3, the claims were dismissed upon initial review of the complaint. Also, all claims against John Doe #1 in Count 3 were dismissed.(Docket No. 4 at page 26).

the line heading to the mess hall and placed against the wall. Pritchard told him that he better "stop complaining about threats and make your family stop calling." The plaintiff asserts that Pritchard hit him with a night stick; that he was thrown to the ground by Radimaker, Jr.; he was kicked in the stomach by John Doe #2 and John Doe #3; and George stepped on his leg. On May 13, 2009, Gagne claims that Taborski told him to "sign into protective custody" because of his problems with the correctional officers.  The plaintiff alleges that he met with Whiteford and "Mr. Roach,"[6] and that Whiteford threatened him and told him that the officers at Attica have a "free hand" and that he better sign into protective custody. (Docket No. 1 at ¶¶ 57-67).

Count 5 – The plaintiff asserts that from August 6, 2008 to September 22, 2008, he informed numerous R.N. John Does and R.N. Jane Does that his cane had been confiscated, and that no effort was made to re-issue the cane. On August 25, 2008, he claims he told P.A. Graf that his cane was confiscated and that he was in pain, but no treatment was issued. On September 4, 2008, he claims he met with John or Jane Doe R.N. who also failed to treat him for pain or re-issue his cane. On September 16, 2008 and November 10, 2008, Gagne alleges he met with John or Jane Doe R.N. and complained of injuries due to falling accidents, but that no treatment was provided. On September 22, 2008, Graf issued Gagne a cane, but did not examine the plaintiff or order any tests. Gagne claims that he complained about back pain to R.N. Turton on November 6, 2008, but that no treatment was provided.  Due to the confiscation of his cane, the plaintiff claims that he was unable to ambulate to the mess hall; lost weight, became depressed, lost sleep and developed diabetes. (Docket No. 1 at ¶¶68-87).

Count 6 – In this count, the plaintiff asserts a claim of supervisory liability against Conway, Roy, Rischer, LeClaire, Gonzalez, Struebel, Egan and Bellamy.  He claims that these administrators were aware of a pattern of retaliatory beatings and other assaults by the officers who assaulted him, but that they did nothing to intervene. (Docket No. 1 at ¶¶ 88-99).[7]

---

[6]  Mr. Roach is not named as a defendant in this action.

[7]  The plaintiff's seventh claim was dismissed in its entirety. (Docket No. 4 at page 26).

**Res Judicata**

This is not the first law suit filed by the plaintiff dealing with claims arising from the

denial of his use of a cane while incarcerated in a DOCCS correctional facility.  See, for

example, Gagne v. Ekpe, Civ. No. 02CV82 in which the plaintiff complained that he was denied

the use of his cane while incarcerated at the Southport Correctional Facility in August of 2001. In

addition, the plaintiff filed an action in the New York State Court of Claims alleging many of the

same claims asserted in the instant case.  In the Court of Claims case filed on October 22, 2008

["Claim No. 115986"], Gagne claimed that on August 6, 2008, his cane was confiscated (Docket

No. 13-1, Exhibit C at ¶ 8); on August 30, 2008, September 6, 2008, and October 8, 2008, he was

forced to move to a new cell block and forced to carry his "50 pound" bags of property to his

new cell (Docket No. 13-1, Exhibit C at ¶ 10); that he slipped and fell while trying to participate

in outdoor exercise without his cane (Docket No. 13-1, Exhibit C at ¶ 11); that he fell on

September 15, 2008 (Docket No. 13-1, Exhibit C at ¶ 12); that he saw medical personnel on

September 16, 2008 and September 22, 2008, and complained of injuries due to his falls, but no

treatment or tests were ordered (Docket No. 13-1, Exhibit C at ¶ 13); and that during this period

he was forced to go to mess hall without his cane, causing him to miss meals (Docket No. 13-1,

Exhibit C at ¶ 15).  On January 27, 2010, Gagne filed an amendment to Claim No. 115986,

asserting that various employees of Attica and the Wende Correctional Facility delayed  or

otherwise interfered with his medical treatment causing him to fall and injure himself (Docket

No. 13-1, Exhibit D at ¶¶ 2, 12). The plaintiff again asserted that his cane was confiscated on

August 6, 2008 (Docket No.  13-1, Exhibit D at ¶8); that he was forced to move to a different cell

block on August 30, 2008, September 6, 2008 and October 8, 2008 and carry "50 pound"

property bags without the use of his cane (Docket No. 13-1, Exhibit D at ¶¶ 10, 14); that he fell

because he attempted to participate in outdoor activities without his cane (Docket No. 13-1,

Exhibit D at ¶11); that he was being denied use of his cane and therefore was being excluded

from meals and participation in outdoor exercise (Docket No. 13-1, Exhibit D at ¶¶ 4, 15, 16);

that his cane was taken away because it was considered a weapon (Docket No. 13-1, Exhibit D

at ¶7); that on August 29, 2008, September 16, 2008 and September 22, 2008, he saw medical

personnel complaining about repeated falls but no treatment or tests were performed (Docket No.

13-1, Exhibit D at ¶¶ 11, 13, 17).

On August 14, 2012, Gagne agreed to settle Claim No. 115986[8] for a payment of

$3500.00. (Docket No. 13-1 at page 10). In conjunction with the settlement, Gagne executed a

release in which he released and discharged the New York State Department of Corrections and

Community Supervision, and the State of New York, its officers, agents ***and employees*** from all

claims, demands and liability of every kind and nature, legal or equitable, occasioned by or

arising out of the facts set forth in the foregoing claim."  (Docket No. 13-1 at pages 16-

17)(Emphasis added).

It is clear that the claims stated in Claim No. 115986 encompass the plaintiff's claims as

asserted in Counts 1, 2, 5 and portions of the claims alleged in Count 3 in the complaint filed in

this action.  The defendants contend that these claims are barred by the doctrine of res judicata

pursuant to the settlement agreement in that case. (Docket No. 13-1 at ¶ 12). "Under 28

U.S.C.§1738, 'Congress has specifically required all federal courts to give preclusive effect to

---

[8]   The settlement also resolved two additional claims filed by the plaintiff: Claim No.
117754 and 121283. (Docket No. 13-1 at page 16).

state-court judgments whenever the courts of the State from which the judgments emerged would

do so.'" Barrington v. New York, 806 F.Supp.2d 730, 739 (S.D.N.Y.2011) (quoting Allen v.

McCurry, 449 U.S. 90, 96, (1980)). Consequently, whether plaintiff's claims are precluded turns

on an analysis of New York law. "New York employs a transactional approach to *res judicata*

whereby once a claim is brought to a final conclusion, all other claims arising out of the same

transaction or series of transactions are barred, even if based upon different theories or if seeking

a different remedy." Barrington, 806 F.Supp. at 739 (quoting Yoon v. Fordham Univ. Faculty

and Admin. Retirement Plan, 263 F.3d 196, 200 (2d Cir.2001) (quotation marks omitted)). This

applies unless the "initial forum lacked the power to grant the full measure of relief sought in the

later litigation." Pack v. Artuz,  348 F.Supp.2d 63, 69 (S.D.N.Y.2004). Here, the plaintiff brought

the instant claims against the individual defendants in both their official and individual

capacities. (Docket No.  1 at pages 2-3).  While "[t]he Court of Claims has jurisdiction over tort

claims brought against the State and over damages claims brought against state employees in

their official capacities," it does not have jurisdiction over claims brought against state officials

in their individual capacities.  Barrington, 806 F.Supp2d at 744-745.  Thus, typically, a judgment

from an action in the New York Court of Claims will be held to have a preclusive effect with

respect to the claims asserted against individual defendants in their official capacity. Pizarro v.

Gomprecht, 2013 WL 990998 (E.D.N.Y.,2013)(Because the Court of Claims did not have the

jurisdiction to hear plaintiff's claims against defendants in their individual capacities, those

claims are not precluded).  In cases such as here, where a settlement agreement accompanies a

dismissal, "the preclusive effect of the settlement is measured by the intent of the parties to the

settlement." Berrios v. State University of New York at Stony Brook, 518 F.Supp.2d 409

(E.D.N.Y.,2007) citing <u>Hanley v. Cafe des Artistes, Inc.</u>, 1999 WL 688426 at *6

(S.D.N.Y.,1999) quoting <u>Greenberg v. Board of Governors</u>, 968 F.2d 164, 168 (2d Cir.1992).

This is so because a settlement resolving a Court of Claims action can also include claims that

were not pending before the Court of Claims. In <u>Berrios</u>, the plaintiff brought a §1983 action

against various defendants, in both their official and individual capacities, after having settled a

Court of Claims lawsuit involving acts by the defendants alleged in the federal Court action. The

Court held that the facts set forth in the Court of Claims action were identical to those set forth in

support of the claims in the §1983 action. Citing to the language of the release executed in the

Court of Claims matter, the Court in <u>Berrios</u> found that any claim arising from the same set of

facts which the plaintiff may have filed prior to the date of the release was barred by the doctrine

of *res judicata*. <u>Berrios</u>, 518 F.Supp.2d at 419-420.

In response to the instant motion,[9] much of the plaintiff's argument focuses on the fact

that the Court of Claims lacks jurisdiction over the defendants in their individual capacity and

could not grant punitive damages or declaratory or injunctive relief.  (Docket No. 18 at pages 1-

5).[10]  However, as noted above, here the preclusive effect, for *res judicata* purposes, is measured

---

[9]   Gagne also argues that the defendants' motion for judgment on the pleadings based
upon *res judicata* is premature and should be made after discovery is provided. (Docket No. 20 at
pages 1-2). The plaintiff does not identify any discovery issue relevant to the determination of the
application of *res judicata* in this matter.

[10]   The plaintiff also contends that he lacked a full and fair opportunity to litigate the
Court of Claims action because his life was in danger while he was at Attica. (Docket No. 18 at
pages 5-6). Such a claim is self-serving and belied by the fact that the plaintiff filed the instant
action. Further, the plaintiff has never moved to rescind or otherwise challenge the settlement
agreed to in the Court of Claims matter. The plaintiff has not demonstrated that he lacked a full
and fair opportunity to litigate the Court of Claims matter which was resolved by the settlement
and release at issue.

by the intent of the parties as agreed upon in the settlement and release resolving the Court of

Claims action.  The language of the release executed by the plaintiff in the related Court of

Claims case is unambiguous.  The release, which accompanied the settlement of the Court of

Claims matter raising identical claims to those asserted by Gagne in this case, states that the

plaintiff released and discharged "the New York State Department of Corrections and

Community Supervision, and the State of New York, its officers, agents **and employees** from all

claims, demands and liability of every kind and nature, legal or equitable, occasioned by or

arising out of the facts set forth in the foregoing claim." (Docket No. 13-1 at pages 16-

17)(Emphasis added). By its express language, the plaintiff's  release extended to the employees

of DOCCS.[11]  Thus, the plaintiff is barred by the doctrine of *res judicata* from bringing the

claims asserted in Counts 1, 2 and 5, and the portions of the claims in Count 3 that arise out of

the same set of facts raised in the Court of Claims matter.[12]  The defendants' motion for partial

judgment on the pleadings should be granted consistent with the above.


**Plaintiff's Motion for Summary Judgment**

In response to the defendants' motion for judgment on the pleadings, the plaintiff filed a

supplemental opposing declaration (Docket No.  20).  This document also included a motion for

---

[11]   Because a claim against a state employee is deemed a claim against the state (Brown
v. Wagner, 2014 WL 234821 (W.D.N.Y.  2014)("Claims against state employees in their official
capacity are deemed claims against the state itself ... .") citing Kentucky v. Graham, 473 U.S.
159, 166 (1985)), language extending the release to state employees would not be necessary to
discharge the plaintiff's claims against the defendants in their official capacity. Thus, the release
must be read to apply to any such claims against state employees in their individual capacities.

[12]   The defendants acknowledge that the claims in Count 3 relating to threats and
witnessed assaults remain. (Docket No.  13-1 at page 7, n.3).

summary judgment as to the plaintiff's excessive force and supervisory liability claims.  Such a

motion is premature. The plaintiff recognizes as much stating that "upon the completion of

discovery" he will be able to prove that the defendants were aware of officers who have

conducted brutal assaults on inmates. (Docket No.  20 at page 8).  The plaintiff further requested

that summary judgment be granted "or held in abeyance until discovery is complete." (Docket

No.  20 at page 10).  Indeed, as discussed below, the plaintiff has filed a motion to compel

discovery.  In any event, the plaintiff's motion, which merely reasserts the allegations in the

complaint, does not demonstrate that he is entitled to summary judgment as to his excessive force

and supervisory liability claims.  The motion should be denied without prejudice with leave for

the plaintiff to re-file the motion after the completion of discovery.[13]


**Motion to Compel Discovery**

The plaintiff has filed a motion to compel the defendants to respond to various

interrogatories he has served upon them. (Docket No.  21).  The defendants assert that they

advised the plaintiff that they would respond to the plaintiff's discovery demands after the Court

resolved the defendants' motion for summary judgment. (Docket No.  23 at ¶ 7).  Absent an

agreement by the parties to defer discovery pending the resolution of the dispositive motion, the

---

[13]   Upon initial review, the plaintiff's declaration appeared to be only a supplemental
response to the defendants' motion, which had been mis-characterized as a cross-motion.  No
briefing schedule was set and the defendants have not responded to the motion. In the body of the
document filed by the plaintiff, Gagne does specifically request summary judgment with respect
to the excessive force and supervisory liability claims. The plaintiff has not been prejudiced by
the failure of the defendants to respond inasmuch as the motion is premature. In light of the
above, the plaintiff's letter request for a default judgment (Docket Nos. 24 and 25) should be
denied.

defendants should have filed a motion for a protective order.

Notwithstanding, as discussed above, it is recommended that the defendants' motion for partial judgement on the pleadings be granted. Thus, the scope of discovery has been significantly reduced and some of the plaintiff's requests may no longer be relevant to the remaining claims in this action. The defendants are directed to respond to the plaintiff's discovery demands, including the assertion of objections to the respective requests, within 30 days of the date of this Order.  If the parties cannot resolve any remaining disputes relating to the requested discovery, the parties may file an appropriate motion.

## Conclusion

Based on the above, it is recommended that the defendants' motion for partial judgement on the pleadings be granted; and the plaintiff's motion for summary judgment be denied without prejudice.  The plaintiff's motion to compel is granted in part and denied in part, consistent with the above.

Pursuant to 28 U.S.C.  §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y.  Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

WITHIN THE SPECIFIED TIME,  OR TO REQUEST AN EXTENSION OF TIME TO
FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER
BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED
HEREIN.  Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v.
Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir.
1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil
Procedure, and W.D.N.Y.  Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to
consider arguments, case law and/or evidentiary material which could have been, but was not,
presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v.
Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y.  Local Rule 72.3(a)(3),
"written objections shall specifically identify the portions of the proposed findings and
recommendations to which objection is made and the basis for such objection and shall be
supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3)may
result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
February 11, 2014

12