UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Stephan Gagne,

                                        Plaintiff,

                                                              **Hon. Hugh B. Scott**

                                                              11CV361A

                          v.

                                                              **Order**

C.O. Fix, et al.,

                                        Defendants.
_____

        Before the Court is the plaintiff's motion to compel. (Docket No. 43).


                              **Background**

        The plaintiff commenced this action, asserting various claims against 33 defendants who

are either employed at the Attica Correctional Facility ("Attica")  or the administrative office of

the New York Stated Department of Correctional Services ("DOCCS")[1] including: C.O. Fix

("Fix"); C.O.Pritchard ("Pritchard"); C.O. George ("George"); C.O. Radimaker, Sr.

("Rademaker, Sr."); C.O. Radimaker, Jr. ("Radimaker, Jr."); C.O. Bosworth ("Bosworth"); C.O.

John Doe #1, C.O. John Doe #2; C.O. John Doe #3; Sergeant Corcoran ("Corcoran"); Sergeant

_____

        [1]  The plaintiff identified this entity as the New York State Department of Correctional
Services. (Docket No. 1 at page 3).  This state agency is now referred to as the New York State
Department of Corrections and Community Supervision ("DOCCS").

                                        1

Taborski ("Taborski"); Superintendent J. Conway ("Conway"); Dep. Security Chapius ("Chapius"); I.G.P. Supervisor Struebel ("Struebel"); Correction Counselor Whiteford ("Whiteford"); P.A. Graf ("Graf"); P.A. John Does; P.A. Jane Does; R.N.Turton ("Turton"); R.N. John Does; R.N. Jane Does; M.D. John Does; M.D. Jane Does; Commissioner Brian Fischer ("Fischer"); Deputy Commissioner LeClaire ("LeClaire"); Counsel William Gonzalez ("Gonzalez"); Galyn Schenk ("Schenk"); I.G.R. Roy ("Roy"); CORC Director Bellamy ("Bellamy"); CORC Director Egan ("Egan"); and the NYSDOCCS.[2]

The plaintiff claims that he is a qualified person with a disability who suffers from degenerative disc disease, peripheral arterial disease, and cardiac issues which have required triple by-bass surgery and stints inserted in his heart. In addition, Gagne asserts that he is a diabetic and that he suffers from sciatica and other back issues causing him to ambulate with a cane. (Docket No. 1 at page 5). The plaintiff asserts several wide-ranging claims, which District Court Judge Michael Telesca described as "unduly discursive" and "difficult to decipher." (Docket No. 4 at page 2). Several of the plaintiff's claims were dismissed by Judge Telesca upon initial review. Further claims were dismissed as a result of a motion brought by the defendants (Docket No. 29). The remaining claims appear to be those portions of Claim 3 which did not arise out of the same facts as the claims the plaintiff asserted in a prior lawsuit, Claim 4 and Claim 6.

**Motion to Compel Discovery**

---

[2]   The plaintiff also named Deputy Commissioner K. Decker and A.D.A Donna Masterson D'Aloia as defendants. These defendants were removed from the caption inasmuch as the complaint contained no allegations against them. (Docket No. 4 at page 25).

The plaintiff has filed a motion to compel (Docket No. 43) the defendants to respond to a request for discovery filed on November 13, 2014. (Docket No. 37). The plaintiff argues that the defendants did not properly respond to Requests 2, 3, 4, 5, 8 and 9 of his document demand. (Docket No. 43, pages 4-6).

In Request No. 2 request, the plaintiff seeks copies of any complaints, including all grievances, filed by inmates against defendants Pritchard, Radimacher and Bosworth. (Docket No. 37 at ¶2). The defendants object to the request on the grounds that it is overly broad, unduly burdensome and not relevant to the issues in this lawsuit. (Docket No. 41 at page 5). Copies of complaints and grievances filed by inmates other than the plaintiff and relating to claims not at issue in this action are not, without more, relevant to the issues in this lawsuit. If not already produced, the defendants shall produce copies of all complaints and grievances filed by the plaintiff against the defendants relating to the claims in the instant complaint.

In Request No. 3, the plaintiff seeks copies of the complete personnel files for defendants Pritchard, Radimacher and Bosworth. (Docket No. 37 at ¶3). The plaintiff also seeks copies of the personnel files of a defendant he identifies as "George Heltz"[3] (Docket No. 43 at ¶ 13). The defendants again object to these requests but stated that upon review of these files, there are no documents relating to disciplinary action taken against these defendants based upon a use of force against the plaintiff on May 8, 2009. (Docket No. 41 at page 6). The defendants also oppose the request on the ground that the information sought is protected by §50-a of the New York State Civil Rights Law. (Docket No. 41 at page 6). In federal civil rights cases, issues of

---

[3] It appears that this individual was named as "C.O. George" in the complaint (Docket No. 1). In his document demand, the plaintiff identified this individual only as "George." (Docket No. 37 at ¶¶ 8-9).

privilege are governed by federal, not state, law.  It is undisputed that under federal law, New

York Civil Rights Law § 50-a does not prohibit discovery of police personnel documents. <u>Martin</u>

<u>v. Lamb</u>, 122 F.R.D. 143, 146 (W.D.N.Y. 1988).  That does not mean that the state statute is to

be given no effect. According to the New York State Court of Appeals, the legislative intent

underlying the enactment of §50-a was enacted to prevent time consuming and perhaps vexatious

investigation into irrelevant collateral matters in the context of a civil or criminal action, and to

avoid embarrassment and harassment of testifying officers by cross-examination concerning

"unsubstantiated and irrelevant" matters in their personnel files.  See <u>Matter of Capital</u>

<u>Newspapers v. Burns</u>, 67 N.Y.2d 562 (1986). Generally, the Court will direct the production of

documents contained in the personnel file of an officer only if the documents are relevant and

involved disciplinary action taken against the officer.  See <u>Diaz v. Goord</u>, 2007 WL 2815735

(W.D.N.Y. 2007)(Payson, M.J.)(directing disclosure of documents relating to disciplinary action

imposed on the defendants in connection with allegation of excessive force); <u>Wright v. Goord</u>,

2008 WL 2788287 (W.D.N.Y. 2008)(Payson, M.J.)(directing search of personnel files for

documents relating to disciplinary action taken against defendants based upon the use of excessive

force). It is unlikely that documents relating to unsubstantiated claims of excessive force would

lead to admissible evidence. See <u>Crenshaw v. Herbert</u>, 409 Fed.Appx. 428 (2d. Cir. 2011)(the

district court did not abuse its discretion by denying plaintiff's motion to compel production of

defendant's personnel file; the court properly relied on defense counsel's affirmation that the file

contained no relevant disciplinary records; even if evidence of a prior *substantiated* excessive

force investigation existed, on the facts of the particular case before us such evidence would be

inadmissible to show that defendant acted violently in this instance). <u>Crenshaw</u>, 409 Fed.Appx. at

430 citing Fed.R.Evid. 404(b). See also DiRico v. City of Quincy, 404 F.3d 464 (1st Cir.

2005)(district court in arrestee's § 1983 action against police officer for injuries sustained in arrest

did not plainly err in excluding evidence of an earlier arrest by officer that resulted in a complaint

of use of excessive force; evidence had no special relevance to any issue in action, evidence

relating to a single, unsubstantiated claim of use of excessive force had limited probative value,

and admission would have created danger that jury would render verdict on improper basis that

officer was prone to engaging in violent behavior.).  In light of the above, the defendants are

directed to produce only those documents relating to any claims of excessive use of force

involving these individual defendants which have been substantiated upon the conclusion of an

internal administrative investigation or court proceeding.

      The plaintiff also seeks, in Request No. 4, copies of "all arrest records for Pritchard and

Radimacher" including criminal complaints, indictments, statements and Inspector General reports

pertaining to a "gang assault" for which Pritchard and Radimacher were allegedly arrested.

(Docket No. 37 at ¶ 4).  The defendants argue that this information is not relevant to the claims in

this case. Moreover, the defendants contend that these are public records which are accessible to

the plaintiff (and that the plaintiff already possesses at least some of these documents). (Docket

No. 41 at page 6).  To the extent that any such documents are contained in the personnel files of

Pritchard and Radimacher reflecting a substantiated claim of the use of excessive force by

Pritchard and Radimacher against an inmate, these documents (including arrest documents and

Inspector General reports) are to be produced pursuant to both Request No. 3 and Request No.

4.  If these documents do not relate to a substantiated use of excessive force by Pritchard and

Radimacher, no further response by the defendants is required.

5

With respect to Request No. 5, the plaintiff seeks information "concerning the nurse who witnessed the assault of [another inmate]'s injuries, was instrumental in providing the information that led to the arrest of defendant Radimacher for gang assault." (Docket No. 43 at ¶ 12).  The defendants have responded that the plaintiff's reference to a "gang assault" is vague and ambiguous. In addition, the defendants assert that any statements made by the nurse concerning the medical care of another inmate are protected by HIPPA and cannot be produced. (Docket No. 45 at ¶20).  The record before the Court does not clarify the relevance of any documents relating to the nurse.  The defendants are correct that the HIPPA laws would preclude the nurse from revealing any information relating to the injuries sustained or medical treatment received by another inmate who is not a party to this action.  Further, the plaintiff has not articulated how any statements or information from this nurse are relevant to his claims in this case.  The defendants need not respond further to this request.

## Conclusion

Based on the above, plaintiff's motion to compel is granted in part and denied in part, consistent with the above.

   So Ordered.

                                              /s/ Hugh B. Scott
                                              United States Magistrate Judge
                                              Western District of New York

Buffalo, New York
August 5, 2015