UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STEPHEN GAGNE, 84-A-4007,

                                **DECISION AND ORDER**
                                11-CV-361

                Plaintiff,

v.

FIX, et al.,

                Defendants.

Plaintiff Stephen Gagne, a pro se litigant, commenced this action pursuant to 42 U.S.C. Section 1983 against several defendants, all of whom are former or current employees of the New York State Department of Corrections and Community Supervision ("DOCCS"). Gagne bases his complaint on several incidents that allegedly occurred at Attica Correctional Facility ("Attica") in April and May, 2009.[1] Docket Item 1 at 5-38.

Initially, the complaint asserted seven grounds for relief. Upon preliminary screening, the Court (Hon. Michael A. Telesca) dismissed sua sponte the seventh claim and portions of the first and third claims. Docket Item 4. Subsequently, Judge Telesca adopted Magistrate Judge Hugh B. Scott's recommendation to grant the DOCCS defendants' motion for summary judgment or judgment on the pleadings with respect to

---

[1] According to DOCCS's online inmate information database, Gagne was released on parole on August 4, 2016. *See* DOCCS Inmate Locator/Lookup Service http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ2/WINQ120 (last visited July 19, 2017).

the first, second, third, and fifth claims.[2]  Docket Item 13; Docket Item 26, *adopted at*

Docket Item 29.  Gagne's remaining claims allege excessive force (fourth claim) and

supervisory liability (sixth claim).  Docket Item 1 ¶¶ 57-67, 88-96.

All defendants[3] now move for summary judgment on the following grounds: (1)

the plaintiff failed to serve defendant George Heltz;[4] (2) the facts supporting the

plaintiff's fourth claim—excessive force—do not constitute a constitutional violation; (3)

certain defendants were not personally involved in the alleged use of excessive force

and therefore cannot be liable; and (4) the defendants are entitled to qualified

immunity.[5]  Docket Item 76-1 at 2-16; Docket Item 87-1 at 1-10.

Gagne opposes the motion and has submitted a memorandum of law, an

opposing statement of disputed facts, and a declaration with accompanying exhibits.

Docket Items 84, 88.

For the reasons that follow, the DOCCS defendants' motion is granted in part

and denied in part, and Rademacher, Jr.'s motion is denied in its entirety.

---

[2] These claims were dismissed on *res judicata* grounds because they involved facts virtually identical to those asserted in a previous New York State Court of Claims matter brought by the plaintiff.

[3] Defendant Matthew Rademacher, Jr., is represented by separate counsel. Docket Item 64.  His motion for summary judgment, Docket Item 87, closely mirrors that of the DOCCS defendants, Docket Item 76.  All named defendants sometimes will be referred to collectively as "defendants" with citations to their respective papers insofar as they assert the same arguments.

[4] Defendant Heltz was never served in this action, and the plaintiff does not contest the dismissal of the claims against him.  Docket Item 84 at 3.

[5] The defendants also argue that the plaintiff cannot establish a claim of retaliation under the First Amendment.  Docket Item 76-1 at 8-9.  But all counts asserting retaliation already have been dismissed.  Docket Item 4 at 16; Docket Item 26 at 3.

## BACKGROUND

The following facts, drawn from the DOCCS defendants' Rule 56 statement of facts and accompanying affidavits and exhibits (Docket Items 76-2 through 76-4), are undisputed unless otherwise indicated.

### A. Parties and Allegations

At the time of the events alleged in the complaint, Gagne was an inmate in the care and custody of DOCCS, housed at Attica.

Gagne alleges that his Eighth Amendment rights were violated when he was assaulted by Heltz, Gary Pritchard, and Rademacher, Jr. He also claims that John Whiteford threatened and intimidated him. Docket Item 1 at 20, ¶¶ 63-64. With regard to the supervisory defendants—Karen Bellamy, Paul Chappius, James Conway, Thomas Egan, Brian Fischer, William Gonzales, Lucien LeClaire, Richard Roy, George Streubel, Galyn Schenk, and Timothy Taborski—Gagne claims that they were aware of the assault and failed to intervene or prevent it from taking place. Finally, in the claims that still remain, Gagne makes no allegations against Scott Bosworth,[6] Peter Corcoran, DOCCS, David Fix, Deborah Graf, Peter Rademacher, Sr., or Cathie Turton.

### B. Facts Relevant to the May 8, 2009 Incident

Gagne testified that at some point between April 24 and May 24, 2009, Fix told him that he (Gagne) had "a beating coming from Pritchard's crew." Docket Item 76-4 at

---

[6] The allegations against Bosworth stemmed from the claims of retaliation, but those claims have been dismissed. *See supra* note 5.

3

11-12, 13.  Gagne does not claim that Fix was involved in any physical abuse.  *Id.*  But he testified that on May 8, 2009, while attending an evening meal, he indeed got the promised beating.

More specifically, Gagne claims that on the evening of May 8, he encountered Heltz, Pritchard, Rademacher, Jr., and three other corrections officers in the mess hall.  He testified that Pritchard took him out of line and instructed him to get against the wall with his hands above his head.  While other inmates continued walking toward the mess hall, the officers told Gagne to "stop complaining."  Docket Item 76-4 at 18.  According to Gagne, Pritchard hit him once in the ribs with a stick; Rademacher, Jr., punched him on his left side; some unnamed officers kicked him in the stomach; and Heltz stepped on his leg.  Gagne said that he was bruised from being struck with the baton, experienced pain in his ribs on the right side of his body, and experienced pain in his left leg from being stepped on.  *Id.* at 18, 28-29.  But according to the medical records, when Gagne was seen by medical personnel on May 8, and again on May 12, 2009, he did not complain of physical injury, nor did he request any medical care.[7]  *See* Docket Item 76-3 ¶¶ 7, 19.

---

[7] The record is unclear as to when Gagne first received medical attention after the incident. It appears that certain pages of Gagne's deposition relevant to his medical visit are omitted from the defendants' submissions.  The transcript of Gagne's deposition suggests that Gagne was not permitted sick call on the evening of the incident (May 8) but that he did visit medical on May 9 or 10.  Docket Item 76-4 at 28-29.  Gagne testified that he reported the assault to staff, *id.*, yet no notation was made in his medical file, Docket Item 76-3, ¶ 7.  The DOCCS defendants maintain that Gagne was seen after the incident and that he never informed staff of the alleged assault or complained about any injuries sustained as a result.  Docket Item 76-3, ¶ 19.  The medical records themselves indicate visits on May 8, *see infra* at n.8 and accompanying text, and May 12, 2009, *see* Docket Item 76-3.

4

Gagne testified that he understood the beating to be "just a warning, because there was [sic] . . . family members calling from the street and they knew that this was not going to be left unaddressed." Docket Item 76-4 at 21. He therefore spoke with Taborski regarding protective custody on May 13, 2009. *Id.* at 23. But on May 19, 2009, Gagne signed a refusal of an offer of protective custody. Docket Item 84 at 28-29. Gagne testified that he never got a chance to "go back and see [Taborski]. He told me to go speak with my wife on the visit. I was headed to the visit that day . . . But he did absolutely nothing and he never came back to see me again." Docket Item 76-4 at 24.

Gagne also testified that on May 14, 2009, Whiteford, a senior counselor at Attica, advised him not to complain about staff but rather to "blame" another inmate in order to secure a transfer. *Id.* at 25-26. According to Gagne, Whiteford told him, "you want to leave here, pick an inmate, you know, because your problems are about to get worse than they were." *Id.* at 27. A memorandum from Whiteford, dated July 2, 2009, stated that he "did speak with inmate Gagne at his request. I clarified the procedure for requesting Protective Custody and advised him he would have to identify inmates by name or cell location since he stated he was having problems." Docket Item 84-1 at 38-39. Gagne concedes that Whiteford was not involved in any physical abuse. Docket Item 84 ¶ 23.

Gagne testified that he informed defendants Bellamy, Chappius, Conway, Egan, Fischer, Gonzalez, LeClaire, Roy, Schenk, Streubel, and Taborski about the threats and assault. Docket Item 76-4 at at 14, 22, 30, 32-33. For example, Gagne wrote to Chappius on April 28, 2009, reporting that he was told by Fix that he "had a beating

5

coming." Docket Item 84-1 at 8-9. Gagne's wife, Delia Gagne, likewise wrote to prison officials. In her letter dated May 5, 2009, she explained her concerns about her husband's safety in C-Block due to the "3-11 shift officers" whose names she "withheld for the moment." *Id.* at 15-16. For that reason, she requested a facility transfer and protective custody. *Id.*

A fax transmittal from the Assistant DOCCS Commissioner to Conway dated May 11, 2009, advised that an investigation of Gagne's claims was required and noted that a "family member alleges safety concern." *Id.* at 18-19. On the same date, Chappius wrote a memo to Lieutenant Polak that stated, "[n]ow the wife is involved. Add it to the others." *Id.* at 13-14. Gagne reiterated his complaints about the assault in a letter dated May 16, 2009, addressed to Fischer, LeClaire, and Chappius. *Id.* at 20-21.

A memorandum dated May 20, 2009, from the Assistant Commissioner to Conway, indicated that Taborski investigated Gagne's fear of retribution and "found no evidence to substantiate the inmate's concerns for his safety. There is no merit in the inmate's or his wife's allegations." *Id.* at 30-31.

Gagne was transferred to Wende Correctional Facility on June 16, 2009. Four days later, he underwent a 48-minute physical examination by a nurse practitioner, who did not note any bruising or injuries consistent with the alleged assault. Docket Item 76-3 ¶14. Although the exact timing is in dispute, it appears that the transfer and physical examination occurred more than a month after the alleged incident. *Cf.* Docket Item 84 ¶ 26.

On July 31, 2009, Gagne complained to medical personnel about increased back and leg pain, but he did not relate that pain to having been punched or kicked.

6

Likewise, the medical records do not indicate that Gagne complained of physical injury resulting from being punched, kicked, or hit in the ribs or legs, nor did the medical records note any signs or symptoms consistent with any alleged assault. Docket Item 76-3 ¶ 17.

## DISCUSSION

### A. Summary Judgment in Section 1983 Claims

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). A material fact is one that might affect the outcome of a lawsuit. *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003). A "genuine" issue exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where, as here, a plaintiff is proceeding pro se, the court will "liberally construe pleadings and briefs . . . reading such submissions 'to raise the strongest arguments they suggest.'" *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). But even a pro se litigant cannot defeat a motion for summary judgment by relying simply upon conclusory statements or allegations unsupported by facts. *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).

Section 1983 authorizes anyone who has been deprived of a federal right under color of state law to seek relief through "an action at law, suit in equity, or other proper

proceeding for redress." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999) (quoting 28 U.S.C. Section 1983). Two essential elements comprise a Section 1983 claim: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights or his constitutional rights or privileges. *Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998) (citation omitted).

The personal involvement of a defendant is a prerequisite for liability in a Section 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and the doctrine of respondeat superior does not apply to such claims. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). Thus, a plaintiff must demonstrate "a tangible connection between the acts of the defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986) (citation omitted).

**B.     Excessive Force (Fourth Claim)**

The Eighth Amendment prohibits cruel and unusual punishment, which includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components—one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord*, 554 F.3d 255, 268 (2d. Cir. 2009).

"The subjective component of the claim requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." *Wright*, 554

8

F.3d at 268 (internal quotations omitted).  When prison officials are accused of using excessive force, the "wantonness" issue turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999).

Objectively, the plaintiff must show that the alleged use of force was grave or harmful enough to be actionable.  Only physical force that is "repugnant to the conscience of mankind" amounts to a constitutional violation.  *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Conversely, the Constitution's "prohibition of 'cruel and unusual' punishments necessarily excludes . . . de minimis uses of physical force."  *Hudson*, 503 U.S. at 9-10.  As the Second Circuit has noted, not "every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional rights."  *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033 (1973), (*overruled on other grounds* by *Graham v. Connor*, 490 U.S. 386 (1989)).

Yet the "core judicial inquiry" in an Eighth Amendment excessive-force case is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quotation omitted).  In *Hudson*, the Supreme Court emphasized that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident."  503 U.S. at

9. In *Wilkins*, the Court noted that *Hudson* did not merely "lower the injury threshold for excessive-force claims from 'significant' to 'non-de minimis'—whatever those ill-defined terms might mean." 559 U.S. at 39. Instead, the Court explained that *Hudson* "aimed to shift the 'core judicial inquiry' from the extent of the injury to the nature of the force—specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson*, 503 U.S. at 7). And the Court identified several factors to be considered in determining whether a use of force violated the Eighth Amendment:

> [T]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. . . . In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response . . . . The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it.

*Hudson*, 503 U.S. at 7 (quotations omitted).

As noted above, Gagne testified that on May 8, 2009, Heltz, Pritchard, and Rademacher, Jr., (as well as other correction officers who are unnamed or no longer parties to this action) gratuitously took Gagne out of the mess hall line and had him place his hands over his head. Gagne stated that after the officers told him to "stop complaining," Pritchard hit him once in the ribs with a stick; Rademacher, Jr., punched him on his left side; other officers kicked him repeatedly in the stomach; and Heltz

10

stepped on his leg. Docket Item 76-4 at 18-19. Gagne testified that he was bruised and in pain as a result of the assault. *Id.* at 28-29.

For the purposes of this motion, the defendants do not dispute that the incident took place but contend that any alleged injuries stemmed from a de minimis use of force. They base that conclusion on Gagne's allegation that he was struck only once with a baton (by Pritchard) and punched only once (by Rademacher, Jr.). They also assert that Gagne suffered no serious injury as a result. Docket Items 76-1 at 6, 87-1 at 5-6.

With respect to the subjective component, the record does not suggest the need for *any* force here. Indeed, no affidavits were provided from any of the officers involved, and no unusual incident report was completed. Docket Item 76-4 at 27. Although Gagne acknowledges that he was not cuffed or shackled at the time of the assault, he alleges that the assault was entirely unprovoked. *Id.* at 56. And an inmate working as a mess-hall-cart attendant witnessed the incident and corroborated Gagne's version of the events. Docket Item 84-1 at 1-2.

The defendants have offered no legitimate rationale—in fact, they have offered no rationale at all—for the use of force. That is exactly the sort of conduct contemplated by *Wilkins* and *Hudson* as meeting the "subjective" requirement. Stated another way, the plaintiff's allegations suggest that the defendants used force with sadistic and malicious intent.

As it must, this Court views the evidence in the light most favorable to the plaintiff and draws all reasonable inferences and resolves all ambiguities in his favor. *See Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003)

11

(citing *Anderson*, 477 U.S. at 255). For the reasons stated above, there is a triable issue of fact with regard to the subjective component of Gagne's excessive-force claim.

With respect to the objective component, the defendants have submitted Gagne's medical record dated May 8, 2009—the date of the alleged incident—that does not indicate any complaints of pain. Docket Item 76-3 (Exhibit A) (medical records manually filed). The time notation in that record is unintelligible, however, and there is no affidavit submitted by the provider who saw Gagne on that date. It is unclear from the record, then, whether Gagne went to sick call before or after the incident.[8] *Id.* In fact, Gagne testified that he was refused sick call after the incident that day; that he was not seen until a day or two later; and that even then medical staff did not note the assault incident. Docket Item 76-4 at 28-29. Thus, there is no discernable evidence in the record to support the defendants' claim that Gagne did not suffer a significant injury.

What is more, the absence of a significant injury might not be fatal to Gagne's claim. *See, e.g.*, *Griffin v. Crippen*, 193 F.3d 89, 91–92 (2d Cir. 1999) (reasoning, in the context of a summary judgment motion on an Eighth Amendment claim, that while the appellant's excessive-force claim was "weak and his evidence extremely thin," his minor injuries, including a bruised shin and swelling in one knee, were not de minimis as a matter of law because genuine issues of material fact existed). Therefore, because there is a question of fact as to whether Gagne suffered a significant injury, and

---

[8] If Gagne went to sick call *before* the alleged incident, there, of course, could be no record of the incident, or notation of complaints related to it, in the medical record. On the other hand, if he went to sick call *after* the incident, that raises a reasonable inference—absent evidence otherwise—that he went because of some injury sustained as a result of the alleged assault.

12

because if he did not his claim still might survive, Gagne's narrative raises a claim of excessive force sufficient to survive summary judgment.

Accordingly, the defendants' motion for summary judgment is denied as to Gagne's excessive-force claim. Because Gagne does not contest the dismissal of his claims against Heltz, *see supra* at n.5, Gagne's excessive-force claim may proceed against Pritchard and Rademacher, Jr.

Gagne's allegation of an Eighth Amendment violation against Whiteford for making an alleged threat, however, fails to raise a constitutional claim. Even if true, Whiteford's comments that Gagne "wasn't leaving with a staff separation," and that if Gagne wanted to "leave here," he should "pick an inmate, because [his] problems [were] about to get worse . . . ," did not injure Gagne in any way. Docket Item 1 ¶ 64. According to Gagne's sworn testimony, the conversation with Whiteford occurred six days after the alleged assault, and Gagne does not allege that Whiteford was involved in the incident itself.

Whiteford's words seem to offer advice, not to threaten Gagne. But even if Whiteford was threatening Gagne, allegations of threats, standing alone, generally do not raise a constitutional violation. *See, e.g.*, *Cole v. Fischer*, 2010 WL 2130974, *2 (2d Cir. May 27, 2010). Such is the case here. Gagne does not raise an issue of fact as to Whiteford's involvement in the alleged assault; the purported "threat" occurred *after* the use of force by Pritchard and Rademacher, Jr.; and Gagne does not allege any causal connection between the purported threat and any injury he sustained. Under these circumstances, Gagne's claim against Whiteford must be dismissed. *See e.g., Sanders*

*v. Huges*, 2015 WL 5655526, at *5 (N.D.N.Y. Sept. 24, 2015) ("To the extent that a constitutional claim is premised solely on verbal harassment, it must fail.").

**C.     Personal Involvement and Supervisory Liability (Sixth Claim)**

In order to bring a Section 1983 claim against a prison official, "a plaintiff must allege that individual's personal involvement . . . ." *Ippolito v. Goord*, 2012 WL 4210125, at *7 (W.D.N.Y. Sept. 19, 2012). Indeed, "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). But there are several ways in which supervisory officials can be personally involved in a constitutional violation: "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Hernandez*, 341 F.3d at 145.[9]

---

[9] The Second Circuit has not addressed whether any or all of the so-called *Colon* categories survive the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See, e.g., Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) ("Although the Supreme Court's decision in *Ashcroft v. Iqbal* . . . may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations, we need not reach *Iqbal*'s impact on *Colon* in this case . . . ."); *see also Reynolds v. Barrett*, 685 F.3d 193, 206 n.14 (2d Cir. 2012) ("*Iqbal* has, of course, engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon* . . . ."). This Court therefore presumes *Colon* is still good law and applies its factors.

14

Here, Gagne has not made any personal allegations against Fix, Graf, Rademacher, Sr., Corcoran, and Turton in his claim for supervisory liability (or any other claim that still remains). Therefore, the complaint is dismissed as to these defendants.

With respect to Chappius and Conway, on the other hand, Gagne has raised a material issue of fact about their personal involvement. More specifically, he has submitted an April 25, 2009 letter alerting Chappius to the fact that Gagne faced "serious physical harm." Docket No. 84-1 at 8-11. After a later complaint about safety concerns was made by Gagne's wife on May 5, 2009, Chappius acknowledged that he knew about the concerns in a note he wrote to Lieutenant Polak, stating "[n]ow the wife is involved. Add it to the others." *Id.* at 16-17.[10] Likewise, defendant Conway and the Assistant DOCCS Commissioner exchanged correspondence regarding Gagne's case and investigation both before and after the alleged assault. *Id.* at 18-19, 30-31.

While it is true that the mere receipt of a letter, by itself, does not amount to personal involvement, "[a] supervisor's detailed, specific response to a plaintiff's complaint suggests that the supervisor has considered the plaintiff's allegations and evaluated possible responses." *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430–31 (S.D.N.Y. 2010) (citing *Walker v. Pataro*, 2002 WL 664040, at *13 (S.D.N.Y. Apr. 23, 2002) (holding that personal involvement will be found only when a supervisory official "receives and acts on a prisoner's grievance (or substantively reviews and responds to some other form of inmate complaint)")). Here, drawing all inferences in Gagne's favor, it appears that Conway and Chappius not only were aware of the plaintiff's complaints, but discussed them internally with other DOCCS staff, investigated them, and, on at

---

[10] Lieutenant Polak is not a party to this action.

15

least one occasion, initiated communication with Gagne about them. Docket Item 84-1 at 35. Notably, even after the alleged incident, which the defendants do not dispute occurred for purposes of the motion at bar, Conway wrote that there was "no evidence to substantiate the inmate's concerns for his safety. There is no merit in the inmate's or his wife's allegations." Docket No. 84-1 at 30-31. A reasonable jury therefore could find: (1) that the correspondence and note constituted specific "information indicating that unconstitutional acts were occurring," and (2) that the failure of Chappius and Conway to act upon this information constitutes "personal involvement" for the purposes of Section 1983. *See Colon*, 58 F.3d at 873. The DOCCS defendants' motion for summary judgment is therefore denied as to Chappius and Conway.

The allegations against defendant Taborski, on the other hand, were limited to his offering Gagne protective custody after the alleged assault on May 13, 2009. There is no evidence that Taborski was aware of any alleged threats leading to the assault or was otherwise involved in the assault. For that reason, he is not personally involved and cannot be held liable for the use of force incident.

As for Bellamy, Egan, Fischer, Gonzalez, LeClaire, Roy, Struebel, and Schenk, the DOCCS defendants are correct that they are merely employees in supervisory positions. Although Gagne claims that he informed these defendants of the alleged threats and assault against him, he submits nothing more than his own testimony and a handful of either unanswered or forwarded letters. Docket Items 76-4 at 32-33, 84-1 at 13, 24-26, 35, 37. That is insufficient to establish personal involvement. *See, e.g.*, *McFadden v. Friedman*, 2015 WL 5603433, at *19 (N.D.N.Y. Sept. 23, 2015) ("[W]here an inmate alleges that he sent a letter to a prison official, and the prison official failed to

investigate allegations of staff misconduct, the inmate must show more than merely reciting the fact that they sent a letter."); *Rivera v. Fischer*, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) ("[I]f an official receives a letter from an inmate and passes it on to a subordinate for response or investigation, the official will not be deemed personally involved with respect to the subject matter of the letter."); *Mateo*, 682 F. Supp. 2d at 431.

For all the above reasons, the DOCCS defendants' motion for summary judgment as to the supervisory officials is granted with respect to Fix, Graf, Rademacher, Sr., Corcoran, Turton, Bellamy, Egan, Fischer, Gonzalez, LeClaire, Roy, Struebel, Schenk, and Taborski but is denied as to Chappius and Conway.

**D.     Qualified Immunity**

Finally the defendants argue that Chappius, Conway, and Rademacher, Jr., are protected by the doctrine of qualified immunity. [11]  Docket Items 76-1 at 15-17, 87-1 at 9.  Qualified immunity protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In fact, even if the constitutional privileges at issue "are so clearly defined that a reasonable public official would know that his actions might violate those rights,

---

[11] The Court reads the DOCCS defendants' qualified immunity argument as being asserted on behalf of only the supervisory defendants.  Docket Item 76-1 at 16-17 (naming only "Conway, Roy, Fisher, LeClaire, Gonzalez, Struebel, Egan, Bellamy, Schenk, Taberski, and Chappius").  The DOCCS defendants did not include Pritchard in their argument on qualified immunity, and this Court therefore does not consider whether Pritchard is entitled to qualified immunity here.

17

qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991).

It is well-settled that on May 8, 2009, the Eighth Amendment prohibited law enforcement officers from using excessive force against inmates. *See Hudson*, 503 U.S. at 9-10. Here, there is a question of fact as to whether the remaining defendants used not only excessive but also wanton and gratuitous force against Gagne or whether they were personally involved in failing to supervise and prevent that assault. No reasonable security officer could possibly believe that what Gagne has alleged does not violate his constitutional rights. Therefore, Chappius, Conway, and Rademacher, Jr., are not entitled to qualified immunity for the alleged Eighth Amendment violation.

## **CONCLUSION**

For the reasons discussed above, the DOCCS defendants' motion for summary judgment (Docket Item 76) is granted in part and denied in part, and Rademacher, Jr.'s motion for summary judgment (Docket Item 87) is denied in its entirety.

This action against defendants Chappius, Conway, Pritchard, and Rademacher, Jr., is referred back to Judge Scott for further proceedings. All claims against the other defendants are dismissed consistent with this Decision and Order.

SO ORDERED.

*s/Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

DATED: October 11, 2017